UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NICHOLAS APONTE                    :
                                   :
                                   :   CIV. NO. 3:99CV847 (WWE)
        v.                         :
                                   :
EDWARD ARRINGTON, ET AL            :
                                   :

RECOMMENDED RULING ON MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

     The plaintiff brings this case under 42 U.S.C. Section 1983,
alleging that on May 11, 1996, while incarcerated at Hartford
Correctional Center, plaintiff was assaulted by a fellow inmate,
Edwin Ortiz, and that prison officials, after being warned by
plaintiff, failed to protect the plaintiff from this assault.
Plaintiff also alleges that he did not receive timely and proper
medical care, causing unnecessary pain and suffering.

     Defendants move for summary judgment on the grounds that
there is no factual basis for plaintiff's claims of deliberate
indifference.  They further assert qualified immunity.

     Plainitff objects to Defendants' Motion for Summary Judgment
only as to defendants Edward Arrington and Stephen Acerbo.[1]

     For the reasons that follow, defendants' Motion for Summary
Judgment **[Doc. #32]** is **GRANTED**.

_____

     [1] Plaintiff agrees to the dismissal of the claims against
Defendants Angel Martinez, Roxann Ellis-Denby, Michael Lynch and
[First Name Unknown] Harris.

II. <u>STANDARD OF LAW</u>

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  Rule 56 (c), Fed. R. Civ. P.; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . ."  <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir. 1992) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S. 965 (1990).  After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  <u>Aldrich</u>, 963 F.2d at 523.  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment

2

proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), <u>cert.</u> <u>denied</u>, 502 U.S. 849 (1991).  <u>See also</u> <u>Suburban Propane v.</u> <u>Proctor Gas, Inc.</u>, 953 F.2d 780, 788 (2d Cir. 1992).

In the context of a motion for summary judgment pursuant to Rule 56(c), disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law even if the disputed issues were resolved in favor of the non-moving party.  Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>Cartier v. Lussier</u>, 955 F.2d 841, 845 (2d Cir. 1992).

III. <u>FACTS</u>

The undisputed facts are as follows:

1.  Plaintiff is an incarcerated inmate within the Connecticut Department of Correction ("DOC").  (Compl. ¶4).

2.  Plaintiff is serving a thirty-eight (38) year sentence for convictions of Felony Murder and Robbery.  (Pl's Depo. 7).

3.  At all times pertinent to this action, the defendants were DOC employees.  (Def. 56(a)(1) Stat. ¶3).

5.  The plaintiff has been continuously incarcerated since August 1995.  (Pl's Depo. 7).

6.  The plaintiff was a member of the Latin Kings gang (Id. at 8).

7.  According to the plaintiff, prior to his incarceration,

he left the gang.  (Id. 10-11).

4.  On August 15, 1995, the plaintiff was initially incarcerated at New Haven Correctional Center.  (Pl's Depo. 7).

8.  When the plaintiff was initially incarcerated, a request was made by the plaintiff's family that the plaintiff be placed into protective custody.  (Doc. #124, Attachment B: Pl's DOC 1995 Classification Package).

9.  The protective custody request was made by the plaintiff's father due to the plaintiff's past affiliation with the Latin Kings.  (Id.).

10.  In the protective custody request, the plaintiff listed two inmates who were threatening to him: Christopher DeMetro and Jose Delgado.  (Id.).

11.  On September 19, 1995, the DOC Classification Unit placed the plaintiff into protective custody.  (Id.).

12.  On November 2, 1995, the plaintiff was transferred to Hartford Correctional Center ("HCC") and placed into a protective custody unit: C-3.  (Pl's Depo. 18-23).

13.  At the time of his transfer to HCC, plaintiff first met inmate Edwin Ortiz, who was also a protective custody inmate at HCC. (Id.).

14.  For a period of time at HCC, plaintiff was housed in the same cell with inmate Ortiz.  (Id.).

15.  Inmate Ortiz was not a member of the Latin Kings.

4

(Id.).

16.  From November 2, 1995 to May 11, 1996, despite being housed in the same protective custody unit at HCC, there were no physical incidents or altercations between the plaintiff and inmate Ortiz.  (Id.).

17.  The plaintiff claims to have submitted four Inmate Request Forms regarding the threats he received from inmate Ortiz. (Pl's Depo. 26, 27, 30, 33, 34).

18.  The plaintiff asserts that the Inmate Request Forms that he addressed to Captain Martinez and Warden Arrington were placed into a universal mailbox in the C-3 unit that was used for interdepartmental mail, as well as the U.S. Mail.  (Pl's Depo. p. 26.)

19.  The plaintiff does not have any copies, or any other record, of Inmate Request Forms that he allegedly submitted at HCC in 1996.  (Pl's Depo. 25-35).

20.  The defendants do not have any copies, or any other record, of any Inmate Request Forms that were allegedly submitted by the plaintiff at HCC in 1996.  (Def. 56(a)(1) Stat. ¶19).

21.  From February through April of 1996, the plaintiff did not orally advise any correctional supervisor or counselor to express concerns regarding inmate Ortiz.  (Pl's Depo. 34-36).

22.  Between April 8, 1996 and April 30, 1996, plaintiff was moved to a different protective custody tier at HCC from

inmate Ortiz.  (Id., Compl. at ¶ 15).

    23.  When the inmates in the protective custody unit were called to recreation, they did not have to take recreation and, instead, could opt to stay in their cells or in the day room. (Pl's Depo. 42; Acerbo Depo. 26).

    24.  On the evening of May 11, 1996, the plaintiff chose to take recreation and was in the gym area, lifting weights.  (Pl's Depo. 42)._____

    25.  While the plaintiff was talking to another inmate, inmate Oritz hit him in the left side of the face with a weight. (Pl's Depo. 44).

    26.  Officer Michael Lynch was assigned to the gym area for inmate recreation and upon observing plaintiff's injuries he called a Code White, which is a code for a medical emergency. (Doc. 124, Attachment E: Incident Report).

    27.  According to the DOC Center Control Log, the Code White was called by Officer Lynch at 8:28pm.  (Doc. 124, Attachment L: Center Control Log).

    28. When Nurse Denby determined that the plaintiff should be treated for his injury at an outside hospital, her supervisor, Maryann Rodriquez, phoned Dr. Blanchette to inform him of the situation.   (Denby Depo. 8).

    29. Dr. Blanchette returned the phone call and ordered that the plaintiff be taken to Uconn Emergency Room for evaluation.

(Denby Aff. ¶14).

30. The transport of an inmate to an outside medical facility is handled by custodial staff. (Acerbo Aff. ¶14).

31. Defendant Stephan Acerbo was the supervisor on duty at the time of the attack and as such was responsible for investigating the incident and arranging for the plaintiff's non-ambulance transportation. (Depo. of Acerbo 5, 25).

34. At approximately 9:45pm, Major Harris (who was not at the facility) was advised by phone that inmate Aponte was to be taken to an outside medical facility. (Acerbo Aff. 12.)

35. At approximately 10:00pm, Correctional Officers Soares and Harvey escorted the plaintiff to the Uconn Emergency Room. (Acerbo Aff. 13).

36. The plaintiff underwent surgery two days later at the Uconn Health Center. (Denby Aff. 16.)

37. In arranging the transport of an inmate to an outside medical facility, there are various factors for custodial staff to consider, including, but not limited to, the exigency of the inmate's medical situation, the security risk and escape risk posed by the inmate, as well as the availability of DOC staff and vehicles. (Acerbo Aff. 11).

38. Defendant Acerbo was the supervisor on duty on May 11, 1996. (Id. 5-6).

39. Defendant Arrington was the Correctional Warden for

Hartford Correctional Center on May 11, 1996.  (Arrington Aff.
¶3).

IV.  Procedural History

The plaintiff first filed this action on May 4, 1999 [Doc.
#2] and the Court dismissed his complaint without prejudice on
August 12, 1999 [Doc. #6].  The plaintiff moved to reopen the
case [Doc. #7] and the Court granted that motion on October 7,
1999.  Plaintiff then filed an amended complaint on October 7,
1999 [Doc. #9], a third amended complaint on March 8, 2001 [Doc.
#38] and a fourth amended complaint on June 20, 2002 [Doc. #70].
The defendants moved for judgment on the pleadings, arguing that
the plaintiff failed to exhaust his administrative remedies
pursuant to the Prison Litigation Reform Act [Doc. #65] and on
March 11, 2003, the District Court converted the defendants'
motion into a motion for summary judgment and granted the motion
[Doc. #74].  On appeal, the United States Court of Appeals for
the Second Circuit remanded the case for reconsideration.  Aponte
v. Armstrong, 137 Fed. Appx. 414 (2d Cir. 2005).  Upon
reconsideration, on July 19, 2007, the District Court vacated its
previous judgment in favor of the defendants and reopened the
case [Doc. #103].  Defendants now move for summary judgment [Doc.
#124].

V.   DISCUSSION

1. Deliberate Indifference to a Serious Medical Need

       Defendant Acerbo argues that there is no factual basis for
the plaintiff's claim of deliberate indifference to a serious
medical need. Deliberate indifference by prison officials to a
prisoner's serious medical need constitutes cruel and unusual
punishment in violation of the Eighth Amendment. See  Estelle v.
Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim,
however, the plaintiff must allege "acts or omissions
sufficiently harmful to evidence deliberate indifference to
serious medical needs." Id. at 106. A prisoner must show intent
to either deny or unreasonably delay access to needed medical
care or the wanton infliction of unnecessary pain by prison
personnel. See  id. at 104-05. Mere negligence will not support a
§1983 claim; the conduct complained of must "shock the
conscience" or constitute a "barbarous act." McCloud v. Delaney,
677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex
rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).

       There are both subjective and objective components to the
deliberate indifference standard. See  Hathaway v. Coughlin, 37
F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom., Foote v.
Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be
"sufficiently serious" in objective terms. Wilson v. Seiter, 501
U.S. 294, 298 (1991); see  Nance v. Kelly, 912 F.2d 605, 607 (2d

Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"); see e.g., Neitzke v. Williams, 490 U.S. at 319 (1989) (brain tumor); Hathaway v. Coughlin, 841 F.2d 48 (2d Cir. 1988) (broken pins in hip); Williams v. Vincent, 508 F.2d 541 (2d Cir. 1974) (doctor discarded inmate's ear and stitched stump rather than attempting to reattach ear); Martinez v. Mancusi, 443 F.2d 921 (2d Cir. 1970) (prison doctor refused to follow surgeon's instructions and refused to give prescribed painkiller to inmate), cert. denied, 401 U.S. 983 (1971). Not all medical conditions, however, satisfy this component of the standard. See e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw), cert. denied, 506 U.S. 841 (1992); Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988) (kidney stone); Hanton v. Grotta, No. 3:97CV93, 2000 WL 303428 (D. Conn. Feb. 11, 2000) (back and neck pain, denial of bottom bunk); Malsh v. Austin, 901 F. Supp. 757 (S.D.N.Y. 1995) (delay in providing routine dental treatment).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66 (citing Wilson, 501 U.S. at 298). "[A] prison official does not

act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)); Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000)).

> A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998); United States ex rel. Hyde v. McGinnis, 429 F.2d 864, 867 (2d Cir. 1970) (citing Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968)); McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) ("[t]here is no right to the medical treatment of one's choice..."). Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred. Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). As long as the medical care is adequate, there is no Eighth Amendment violation. Wandell v. Koenigsmann, No. Civ.A. 99-8652, 2000 WL 1036030, at *3 (S.D.N.Y. July 27, 2000).

> Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons. Church v. Hegstrom, 416 F.2d 449, 450-451 (2d Cir. 1969). Federal courts are generally hesitant to second guess medical judgments and to constitutionalize claims which sound in state tort law. Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given medical

> attention that judges would wish to have for
> themselves.")  So strong is this view that
> determinations of medical providers
> concerning the care and safety of patients
> are given a "presumption of correctness."
> Perez v. The County of Westchester, 83 F.
> Supp.2d 435, 440 (S.D.N.Y. 2000) (citing
> Kulak v. City of New York, 88 F.3d 63, 77 (2d
> Cir. 1996)).

Sonds v. St. Barnabas Hospital Correctional Health Services, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).

_____  Plaintiff's claims cannot survive a motion for summary judgment on the current record.  Plaintiff alleges that defendant Acerbo violated the Eighth Amendment by having him wait in the hallway approximately one hour and 15 minutes for transportation to the hospital.  In the medical incident report, Nurse Denby wrote, "bleeding profusely from mouth also spitting out pieces of tissue.  Right side of chin appears to have dropped about 1cm from it's original position...bottom front teeth are out of position and appear to be free floating.  No swelling noted around jaw or mouth."  (Doc. 124, Attachment E: Incident Report.)  While it is clear that Mr. Aponte was in serious discomfort, there is no claim that his injuries worsened while waiting for the authorization to transport him.  The Court finds that the defendants followed designated security precautions in arranging for the transport of a prisoner and transported Mr. Aponte to the Uconn Medical Center so that he could obtain proper treatment within a reasonable amount of time.  There is no

evidence that defendant Acerbo delayed plaintiff's transport for the purpose of delaying his receipt of care.

Under the circumstances of this case, the Court cannot find that the length of time plaintiff waited to be transported to the hospital rises to the level of an Eighth Amendment violation. Thus, summary judgment is GRANTED as to Defendant Acerbo.

## 2.  Failure to Protect

Plaintiff contends that defendant Arrington, as warden of Hartford Correctional Center in 1996, failed to protect him from being attacked by Edwin Tito Ortiz on May 11, 1996, in violation of plaintiff's Eighth and Fourteenth Amendment rights.

Under the Eighth Amendment, prison officials are required to take reasonable measures to guarantee the safety of inmates; this duty includes within it an obligation to protect prisoners from harm caused by fellow inmates. Farmer v. Brennan, 511 U.S. 825, 833-34 (1994).  When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1)he or she was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight. Farmer, 511 U.S. at 834, 837.  This analysis entails both an objective and subjective inquiry. Id.  A prison official can only be held liable for failing to adequately protect an inmate if he subjectively "knows of and disregards an

13

excessive risk to an inmates health or safety." <u>Farmer</u>, 511 U.S. 825.

Under the Fourteenth Amendment's substantive due process provision, the requisite mental state for establishing a failure to protect claim requires that the actions alleged on the part of a defendant must transcend mere negligence. <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48 (1986)(lack of due care simply does not approach the sort of abusive government conduct that the Due Process clause was designed to prevent).

Plaintiff claims to have filed four inmate request forms between February 26 and April 30, 1996, and asserts that on at least two of them he wrote, "Ortiz was trying to extort the plaintiff and that the plaintiff faced harm if the plaintiff did not comply with inmate Ortiz's demands."  (Amended Compl. ¶8). In addition to denying receipt of these forms, defendant argues that the "threat" to the plaintiff by Mr. Ortiz was not evident because Mr. Ortiz had an overall low risk assessment.  However, Mr. Ortiz's disciplinary history includes tickets for assaults, riots, flagrant disobedience, self mutilation and interference with safety and security.  The Court finds that if defendant Arrington received the inmate request forms, he could have

14

concluded that Mr. Ortiz posed a risk to plaintiff.[2]  A failure
by Warden Arrington to take any action throughout the two month
time period that Mr. Aponte alleges to have filed these forms
might rise to a violation of Mr. Aponte's Eighth Amendment
rights.  However, prior to April 30, 1996, plaintiff was moved to
a different protective custody tier than inmate Ortiz.  The
assault by Ortiz occurred in a common area.  There is no evidence
that plaintiff, upon seeing Ortiz in the common area, made any
complaint to the correctional officer on duty or sought to be
protected from Ortiz.  Absent some evidence that the warden knew
Ortiz would be in a position to assault plaintiff after the
warden had concluded Ortiz posed a risk to him, the warden's
actions cannot rise to the level of an Eighth Amendment violation
or transcend the negligence threshold necessary to establish a
violation of Mr. Aponte's Fourteenth Amendment rights.

Accordingly, the Court **GRANTS** summary judgment to Defendant
Arrington.

---

[2] The Court recognizes that a genuine issue of fact exists as
to whether Warden Arrington actually received Mr. Aponte's inmate
request forms.

CONCLUSION

For the reasons stated, defendants' Motions for Summary Judgment **[Doc. #124]** is **GRANTED.**

As the parties have not consented to proceed before a Magistrate Judge, this is a recommended ruling.  Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the Local Rules for United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED at Bridgeport this 17th day of March, 2009.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE